IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROSA SANCHEZ MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:20-CV-909 |
| | § | |
| BANDERA FAMILY HEALTH CARE, P.A. d/b/a BANDERA FAMILY MEDICAL GROUP. | § § § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF ROSA MARTINEZ'S ORIGINAL COMPLAINT
AND JURY DEMAND**

### Introduction

1.  This is an action for unlawful interference and retaliation under the Family and Medical Leave Act (FMLA). Plaintiff Rosa Sanchez Martinez was employed by Defendant Bandera Family Medical Group as a medical assistant and patient coordinator.

### Parties

2.  Plaintiff is an individual residing at 11406 Oaks Hike, San Antonio, Texas 78245. She may be served with papers in this case through the undersigned counsel.

3.  Defendant is a professional association organized under the laws of the State of Texas. Its principal place of business is located at 7579 N. Loop 1604 West, Suite 100, San Antonio, Texas 78249. Defendant may be served through its registered agent, Ramon G. Reyes, at 7579 N. Loop 1604 West, Suite 100, San Antonio, Texas 78249.

## Jurisdiction and Venue

4. The Court possesses subject-matter jurisdiction over this case pursuant to 28 U.S.C. Section 1331 because Plaintiff's brings this claim under a federal statute, the Family and Medical Leave Act. The Court possesses personal jurisdiction over Defendant because Defendant is organized under the laws of the State of Texas and because Defendant continuously does business in the State of Texas. Venue is proper in the Western District of Texas because all of the events giving rise to Plaintiff's claims occurred within the geographic territory of the San Antonio Division.

## Factual Background

5. Around February 2015, Plaintiff commenced employment with Defendant Bandera Family Medical Group as a medical assistant. In 2018 Plaintiff was promoted to a patient coordinator at $18.50 per hour.

6. Around March 2020, Jake, a medical assistant, tested positive for the Coronavirus (COVID19) after treating a patient that had the Coronavirus. Plaintiff had helped Jake with other patients and worked closely with him during that time.

7. On or around April 2, Plaintiff had a slight fever of 99 degrees. Her fever gradually increased to 103 degrees. She went to her manager, Linda Moreno, who instructed Plaintiff to go home and get tested for COVID19. Plaintiff was tested at the Freeman Coliseum and went home to quarantine.

8. On or around April 6, Plaintiff was informed that she was positive for the Coronavirus.

9. Around April 11, Plaintiff began to experience back pain, vomiting, and diarrhea. She called her doctor to let him know her symptoms and to seek guidance on what to do next. Her

doctor informed her that she may have pneumonia. As the symptoms got worse, Plaintiff decided to go to the Methodist Texan Hospital where she was admitted and diagnosed with pneumonia.

10. On April 13, Plaintiff was transferred to Methodist Hospital, and thereafter transferred to the Methodist Ambulatory Surgery Center on April 14. During this time, Plaintiff had a telephonic meeting with the Company to discuss her conditions and update management. Plaintiff was told to feel better and keep them informed.

11. Throughout this time period, Plaintiff was not sent FMLA paperwork. Nor was she informed of her FMLA rights.

12. On April 19, Plaintiff was discharged from the hospital and retested for COVID19. Plaintiff called Imelda, the executive assistant, to inform her that she had been discharged from the hospital and had upcoming appointments with her pulmonologist.

13. On May 11, Plaintiff had lab work and x-rays done. At that point, Plaintiff still had the Coronavirus and could not return to work. Shortly after her appointment, Plaintiff received a call from Imelda asking if she (Plaintiff) could return to work on May 12. Plaintiff stated that she was still positive and could not return. Imelda replied by stating they would put Plaintiff in a separate room to work. Plaintiff further explained that the doctor still wanted to order a CT scan, ultrasounds, and an echocardiogram. Plaintiff also told Imelda that she was not ready to see patients because she remained extremely anxious. Imelda instructed Plaintiff to seek counseling with Dr. Tansy Cattanach, a practitioner employed by Defendant, to discuss her anxiety. Plaintiff was not offered FMLA even though she made clear that, due to her anxiety, she still did not feel ready to return to work.

14. On or around May 20, Plaintiff began seeing Tansy Cattanach every Wednesday to discuss her anxiety related to the Coronavirus. Cattanach diagnosed Plaintiff with Acute Stress Disorder. Plaintiff would get anxious and afraid to enter the work building.

15. On or around May 25, Plaintiff was told that she needed to return to work. She was given a project to do from home for the week. Still there was no mention of the possibility of taking FMLA leave, either continuous or intermittent.

16. On or around May 29, Plaintiff spoke with Imelda and Angela (HR) to inform them that she was not ready to see patients and needed more time. Angela reluctantly agreed that Plaintiff could have one more week, but would need to return on June 8.

17. On June 8, Plaintiff spoke with Imelda, Angela, Mrs. Reyes (the owner's wife) and her team lead, Marytza, regarding her anxiety about seeing patients. Mrs. Reyes informed Plaintiff that Plaintiff would be working at the Helotes location where there are no respiratory patients. Plaintiff pleaded that she was not ready to see patients at this time. Imelda replied, "You have to give it a try." Again, there was no offer of FMLA leave.

18. On or around June 9, Dr. Ramon Reyes, the owner of Bandera Family Medical Group, called Plaintiff over to speak with him. When Plaintiff went over to speak with him, Dr. Reyes removed his face mask and began coughing in front of her. Dr. Reyes thought this was funny, but Plaintiff thought it was inconsiderate given her severe anxiety.

19. On June 10, Plaintiff spoke with the educator at the office, Sarah Villegas, who was a witness to the incident with Dr. Reyes the previous day. Sarah advised Plaintiff to report the behavior to HR. When Plaintiff went to speak with Angela, Plaintiff explained what happened the day before. Angela replied, "Oh you know Dr. Reyes. He was probably just playing around."

4

Case 5:20-cv-00909   Document 1   Filed 08/05/20   Page 5 of 8

Angela stated that she would try to talk with Dr. Reyes. The next day, June 12, Plaintiff received an apology from Dr. Reyes.

20. The last week of June, Plaintiff went to HR to request FMLA paperwork. Plaintiff's anxiety was getting worse due to seeing patients, and Plaintiff wanted to have the ability to take a day off if an episode were to occur.

21. On or around June 26, Plaintiff went to another appointment with Cattanach. Plaintiff explained the anxiety she was having by treating patients. Before Plaintiff had the opportunity to ask for her to fill out my FMLA paperwork, Cattanach stated she could not sign the paperwork because she did not want to interfere with Dr. Reyes. Plaintiff found this very odd—in fact alarming. So Plaintiff informed Cattanach that she would make an appointment with her primary care doctor, Dr. Beck, who also works for Defendant. Cattanach then ominously stated that she recommended that Plaintiff get the paperwork completed by an outside doctor.

22. On July 7, Plaintiff had an appointment with Dr. Beck to review and complete the FMLA paperwork. Dr. Beck completed the paperwork, and Plaintiff returned it to Angela in HR. Angela informed Plaintiff that she should get an outside doctor to complete the paperwork. Plaintiff explained that she could not afford to see an outside doctor. Obviously, this warning, which echoed what Cattanach had advised, caused Plaintiff concern that Dr. Reyes was going to have a very negative reaction to Plaintiff's need for time off for her medical condition.

23. On July 14, the office held a meeting that Plaintiff was unable to attend because Plaintiff was treating a patient. In the meeting, employees were informed that they would begin testing patients for COVID19. Plaintiff began feeling anxious. Linda instructed Plaintiff to sign documents pertaining to the testing. Plaintiff told Linda that she would not sign any documents

until she had thoroughly read them. Linda insisted Plaintiff sign the documents because they were for Dr. Reyes. Plaintiff politely explained again that she would sign once she had read over it.

24. Later in the day, Plaintiff noticed Marytza acting strange. Marytza informed Plaintiff to go into Dr. Reyes' office. Angela and Imelda were present and informed Plaintiff that Mrs. Reyes decided to terminate Plaintiff "because of [her] anxiety." They further explained that people were beginning to notice Plaintiff's condition. Plaintiff attempted to explain that she was trying her best but she had expressed multiple times that she was not quite ready emotionally to see patients and needed time off. Angela proceeded to hand Plaintiff termination paperwork, which Plaintiff did not agree with and refused to sign.

**Causes of Action:  Unlawful Interference and Retaliation under FMLA[1]**

25. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 24 supra.

26. Defendant is an employer within the meaning of the FMLA in that, in both 2019 and 2020, it has employed more than fifty employees.

27. Plaintiff was likewise an employee of Defendant, and at all times relevant to this lawsuit, she was eligible for FMLA leave. In this regard, she had been employed by Defendant for more than one year, had worked more than 1250 hours in the preceding year, and Defendant employed more than 50 employees within a 75-mile radius of the locations where Plaintiff worked.

28. Plaintiff took FMLA-qualifying leave due to her infection with the Corona Virus, and complications, including pneumonia, associated therewith. Defendant did not provide Plaintiff with FMLA paperwork and did not apprise her of her FMLA rights, even though Plaintiff was not notice that Plaintiff's leave was clearly FMLA-qualifying in that it was for a serious health

---

[1] Plaintiff has also timely filed a charge of disability discrimination with the Equal Employment Opportunity Commission. Plaintiff moves to amend this lawsuit to include a claim for disability discrimination once she receives a right to sue letter from the commission.

6

condition. Plaintiff sought additional time off but was required to return to work. Thereafter, Plaintiff formally requested FMLA paperwork and FMLA leave from HR because of anxiety that she was suffering as a result of her Corona Virus diagnosis. This too was a serious health condition under the FMLA. Plaintiff requested that two separate health care providers employed by Defendant complete her FMLA paperwork. One of those health care providers along with the HR manager advised her to have the paperwork completed by an outside health care provider because they were considered of the reaction that Defendant's owner might have. Not long thereafter, Plaintiff was summarily discharged from employment, ostensibly for her "anxiety," which had been caused by her Corona Virus infection, and for which Plaintiff was seeking additional FMLA-qualifying leave.

29. Plaintiff pleads that she was discharged from employment in retaliation for having taken FMLA-qualifying leave. Pleading in addition, or in the alternative, Plaintiff contends that Defendant discharged Plaintiff in interference with her FMLA rights, as Plaintiff had requested FMLA leave for the anxiety that she was experiencing.

30. As a result of Plaintiff's wrongful and illegal termination from employment, Plaintiff has suffered lost wages and benefits, and she will likely continue to suffer such damages in the future. Because Defendant cannot possibly establish that its actions towards Plaintiff were taken in good faith and that it had objectively reasonable grounds for believing that its actions toward Plaintiff, including the discharge of Plaintiff, did not violate the FMLA.

31. Lastly, because Plaintiff has been forced to retain legal counsel to vindicate her legal rights, Plaintiff is entitled to an award of attorney fees.

**Jury Demand**

32. Plaintiff demands a trial by jury.

## Conclusion and Prayer

33.     Plaintiff prays that, upon final judgment, she be awarded the following:

(a) Lost wages and benefits in the past and in the future;

(b) Liquidated damages;

(c) Attorney fees;

(d) Costs of court;

(e) Post-judgment interest; and

(f) All other relief to which Plaintiff is entitled.

Respectfully submitted,

*/s/ Michael V. Galo, Jr.*
Michael V. Galo, Jr.
State Bar No. 00790734
Federal Bar No. 19048
GALO LAW FIRM, P.C.
4230 Gardendale, Bldg 401
San Antonio, Texas 78229
Telephone: 210.616.9800
Facsimile: 210.616.9898
Email: mgalo@galolaw.com
ATTORNEY FOR PLAINTIFF
ROSA SANCHEZ MARTINEZ